631 F.2d 811
 203 U.S.App.D.C. 229
 ARIZONA ELECTRIC POWER COOPERATIVE, INC., and the City of
Willcox, Arizona, Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Salt River Project Agriculture and Power District, Pacific
Gas and Electric Company, Southern Union Company,
and El Paso Natural Gas Company, Intervenors.
SOUTHERN CALIFORNIA GAS COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Arizona Electric Power Cooperative, Inc., City of Willcox,
Arizona, El Paso Natural Gas Company, Southern Union
Company, People of the State of California, and the Public
Utilities Commission of the State of California, and Pacific
Gas & Electric Company, Intervenors.
ARIZONA ELECTRIC POWER COOPERATIVE, INC., and the City of
Willcox, Arizona, Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
El Paso Natural Gas Company, Pacific Gas & Electric Company,
and Southwest Gas Corporation, Intervenors.
EL PASO NATURAL GAS COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Asarco, Inc., et al., Southern Union Company, Arizona
Electric Power Cooperative, Inc., and City of Willcox,
Arizona, General Motors Corporation, Southwest Gas
Corporation, and Pacific Gas & Electric Company, Intervenors.
 Nos. 77-1754, 77-1794, 77-1837 and 77-1844.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 30, 1980.
Decided May 22, 1980.
 
 Petitions for Review of Orders of the Federal Energy Regulatory commission.
 C. Frank Reifsnyder, Washington, D. C., for El PasoNatural Gas Co., petitioner in No. 77-1844, and intervenors in Nos. 77-1754, 77-1794 and 77-1837.
 John S. Fick, Los Angeles, Cal., with whom Thomas D. Clarke, Los Angeles, Cal., was on brief, for Southern California Gas Co., petitioner in No. 77-1794. Jeffrey A. Meith, Los Angeles, Cal., also entered an appearance for Southern California Gas Co.
 Arnold D. Berkeley, Washington, D. C., with whom Roger J. McClure, Washington, D. C., was on brief, for Arizona Electric Power Cooperative, Inc., et al., petitioners in Nos. 77-1754 and 77-1837 and intervenors in Nos. 77-1794 and 77-1844.
 Nicholas W. Fels, Washington, D. C., for ASARCO, Inc., et al., intervenor in No. 77-1844. Jerome Ackerman, Washington, D. C., also entered an appearance for ASARCO, Inc., et al.
 George H. Williams, Jr., Atty., Federal Energy Regulatory Commission, Washington, D. C., with whom Philip R. Telleen and M. Frazier King, Jr., Attys., Federal Energy Regulatory Commission, Washington, D. C., were on brief, for respondent.
 
 
 1
 Joel L. Greene and Richard H. Silverman, Phoenix, Ariz., entered appearances for Salt River Project Agricultural Improvement and Power District, intervenor in No. 77-1754.
 
 
 2
 Malcolm H. Furbush and Howard V. Golub, San Francisco, Cal., entered an appearance for Pacific Gas and Electric Co., intervenor in Nos. 77-1754, 77-1794, 77-1837 and 77-1844.
 
 
 3
 Robert J. Haggerty, Washington, D. C., entered an appearance for Southern Union Co., intervenor in Nos. 77-1754, 77-1794 and 77-1844.
 
 
 4
 J. Calvin Simpson, San Francisco, Cal., entered an appearance for The People of the State of California, et al., intervenors in No. 77-1794.
 
 
 5
 C. H. McCrea, Las Vegas, Nev., entered an appearance for Southwest Gas Corp., intervenor in Nos. 77-1837 and 77-1844.
 
 
 6
 Edward J. Grenier, Jr., Richard P. Noland and William H. Penniman, Washington, D. C., entered appearances for General Motors Corp., intervenor in No. 77-1844.
 
 
 7
 Before BAZELON, Senior Circuit Judge, and WALD and EDWARDS, Circuit Judges.
 
 
 8
 Opinion PER CURIAM.
 
 PER CURIAM:
 
 9
 At issue in these consolidated cases are a June 21, 1977 order of the Federal Power Commission, now the Federal Energy Regulatory Commission, and an August 19, 1977 Commission order denying rehearing. Those two orders found that El Paso Natural Gas Company (El Paso) violated its interim curtailment plan and § 4(d) of the Natural Gas Act (the Act) by delivering natural gas to two of its California customers, Southern California Gas Company (SoCal) and Pacific Gas and Electric Company (PG&E), for injection into storage fields. The Commission found a violation because the gas was delivered under Priority Two (P2) of El Paso's five-priority curtailment plan, despite the fact that the plan made no provision for P2 deliveries for injection into storage. The orders also instituted hearings at the Commission to determine whether those deliveries unlawfully deprived other El Paso customers of gas.
 
 
 10
 These same parties are before the court in a related set of cases, the Load Equation Cases, Nos. 75-1952, et al., --- U.S.App.D.C. ----, 631 F.2d 802 (D.C.Cir. May 22, 1980), also decided today. We will not repeat the discussion in those cases of the relationship between the parties or how El Paso's curtailment plan operates, except as necessary to resolve the separate issues raised in these cases.
 
 
 11
 We affirm the Commission's conclusion that El Paso violated § 4(d). We also reject the argument of two of El Paso's east-of-California (EOC) customers, Arizona Electric Power Cooperative, Inc., and the City of Willcox, Arizona (collectively AEPCO), that the issues they raise relating to the proper remedy for El Paso's unauthorized action are ripe for review.
 
 I. BACKGROUND
 
 12
 El Paso's interim five-priority curtailment plan was approved by the Commission and made part of El Paso's tariff as the result of FPC Opinions 634 and 634-A, 48 F.P.C. 931 & 1369 (1972). None of the five priorities, or any other provision of El Paso's tariff, authorized deliveries for injection into storage under P2 or any other priority. El Paso nevertheless honored nominations from SoCal and PG&E for deliveries of gas for injection into storage under P2 without filing a proposed amendment to its tariff or otherwise asking the Commission whether such deliveries were proper. Storage injection deliveries under P2 for El Paso were not approved by the Commission until FPC Opinion 697, 51 F.P.C. 2053, modified, Opinion 697-A, 52 F.P.C. 1876 (1974), which was not effective until July 1, 1977.
 
 
 13
 In November 1975 AEPCO filed a complaint with the Commission challenging El Paso's P2 storage injection deliveries to SoCal and PG&E under § 4(c) of the Act,[1] which requires all natural gas companies to file tariffs showing their delivery practices with the Commission. AEPCO also alleged that El Paso violated the § 4(b)[2] prohibitions against undue preferences and unreasonable differences in services.
 
 
 14
 As the remedy for its § 4(c) claim, AEPCO asked for a Commission order prohibiting El Paso's P2 storage injection deliveries to SoCal and PG&E. Regarding its § 4(b) claim, AEPCO stated:
 
 
 15
 the FPC should order El Paso to correct the injustice already suffered by east-of-California customers by reducing future deliveries to its California distributors in the amount of the storage volumes unlawfully provided and thereby return such volumes to the customers from whom they have been unlawfully diverted. AEPCO further respectfully submits that such action can be taken without hearing, except to the extent that a hearing may be necessary in order to establish the exact amount of gas unlawfully taken and appropriate procedures for its return.
 
 
 16
 J.A. 8.
 
 
 17
 The Commission decided AEPCO's complaint on a stipulated record.[3] It found § 4(d), which requires Commission approval for tariff changes,[4] to be "more pertinent" than § 4(c) to AEPCO's first contention and relied on § 4(d) in finding El Paso's delivery practice unlawful; as noted above, the Commission also concluded that hearings were necessary to decide AEPCO's § 4(b) claim. El Paso and SoCal seek review of the Commission's determination that El Paso violated § 4(d), and AEPCO challenges the Commission's conclusion that hearings are necessary to determine whether AEPCO or other El Paso customers were unlawfully deprived of gas because of El Paso's unlawful P2 storage injection deliveries.
 
 II. THE § 4(d) VIOLATION
 A. Contentions of the Parties
 
 18
 El Paso attempts to justify its delivery of storage injection gas to SoCal and PG&E under P2 on the ground that the "contemplated" end-use of the gas fell within P2. El Paso concedes that nothing in Opinions 634 and 634-A authorized those deliveries. It nevertheless argues that because the priorities set forth in its interim curtailment plan were based on end-use, it could reasonably interpret that plan to allow for P2 storage injection deliveries based on nominations from its California customers that stated the gas would be used to satisfy P2 needs.
 
 
 19
 SoCal bolsters that argument by asserting that Opinions 634 and 634-A are internally inconsistent. In those opinions the Commission required that withdrawals from storage by SoCal and PG&E be counted as an independent source of supply for them in computing their needs under El Paso's curtailment plan; the Commission refused, however, to adjust that computation to reflect the fact that some of the gas already in storage when those opinions were issued in 1972 came from El Paso. SoCal asserts that refusal created an "irreconcilable inconsistency" in how El Paso's curtailment plan was to operate and argues that when El Paso accepted the P2 storage injection nominations, it was simply following the maxim that inconsistent provisions in decisions requiring compliance should be reconciled in a reasonable fashion.[5]
 
 
 20
 Finally, El Paso relies on Standard Oil Co. v. DOE, 596 F.2d 1029 (Em App.1978), to support its P2 storage injection deliveries. In Standard Oil, companies confronted with ambiguous Federal Energy Administration (FEA) regulations asked for and received guidance from FEA auditors and compliance officers. The court rejected the Department of Energy's later contrary interpretation, in part because "the statements by the FEA auditors and other lower level officials are entitled to weight in determining the thoroughness of the FEA's consideration of its regulations, the validity of its reasoning, and its consistency with earlier and later pronouncements." 596 F.2d at 1056. El Paso focuses on the 1972 testimony of a Commission staff member in the hearings on El Paso's interim curtailment plan to justify its decision to honor the P2 storage injection nominations of its California customers under the Standard Oil rationale. El Paso also reasons that Standard Oil supports the actions it took relying on that testimony, because the staff member's statements were "consisten(t) with (the Commission's) . . . later pronouncements" on curtailment plans, specifically FPC Order 467-B, 49 F.P.C. 583 (1973), which dictated that customer storage injection nominations were to be included in P2.
 
 B. Discussion
 
 21
 We reject the argument that a pipeline may make deliveries not allowed by its curtailment plan simply because the expected end-use of that gas appears to be consistent with the plan.[6] See Pennsylvania R.R. v. International Coal Mining Co., 230 U.S. 184, 197, 33 S.Ct. 893, 896, 57 L.Ed. 1446 (1913) (a rate tariff filed with the Interstate Commerce Commission, "so long as it was of force, was . . . to be treated as though it had been a statute," binding upon the filing party as well as its customers). The purpose of § 4(d) is to provide public notice of the services a pipeline actually provides. Section 4(d) unequivocally states that unless the Commission otherwise orders, "no change" shall be made in a tariff "except after thirty days' notice to the Commission and to the public." 15 U.S.C. § 717c(d) (1976) (emphasis supplied). AEPCO did not learn of El Paso's P2 storage injection deliveries to SoCal and PG&E until long after they began; AEPCO promptly complained to the Commission when it learned of that practice. Section 4(d) would become meaningless if we accepted El Paso's argument that it can effectively change the terms of its filed tariff without notice to the Commission and the public.
 
 
 22
 We intimate no view onwhether SoCal is correct in asserting that Opinions 634 and 634-A are internally inconsistent; we reject SoCal's argument, however, that it and El Paso could cure on their own what SoCal asserts was "an irreconcilable inconsistency." There may be circumstances where a pipeline and some of its customers may remedy minor apparent ambiguities or inconsistencies in a tariff or in Commission orders, but the asserted internal conflict in Opinions 634 and 634-A and the response of El Paso and its California customers were clearly significant enough to require either an explicit request for guidance from the Commission or an amendment to El Paso's tariff.
 
 
 23
 We also conclude that the staff testimony relied upon by El Paso to support its P2 storage injection deliveries was far removed from the type of specific guidance given by FEA in Standard Oil after the companies there expressly brought the regulatory ambiguity to the FEA's attention. Here, neither El Paso nor its California customers asked for guidance from the Commission, either formally or informally. And the staff testimony was in fact not consistent with the Commission's later pronouncement on the question, Order 467-B.[7] The staff witness stated that the ultimate use of the injected gas should determine its priority, specifically agreeing that if used for residential purposes, it would fall within P1;[8] Order 467-B explicitly provided that customer storage injections should fall within P2.[9]
 
 III. THE NEED FOR A HEARING
 
 24
 AEPCO admitted at oral argument that the actual end-use of the storage gas at issue has not been determined and conceded in its brief (AEPCO Br. 14) that the Commission has not yet denied any of the relief AEPCO seeks. We therefore conclude that AEPCO's petition for review is premature.[10]
 
 
 25
 The Commission has begun a broad inquiry into the issues raised by AEPCO's complaint. As the Commission put it, "the investigation herein instituted is charged with the complex task of reconstructing the actual impact of El Paso's unauthorized delivery of its California customers' respective storage injection requirements." J.A. 110. And Commission counsel at oral argument asserted that the Commission can and will consider AEPCO's claim for restitution as a possible remedy.
 
 
 26
 After the Commission's inquiry is completed, judicial review will be available. We therefore conclude that AEPCO's allegations and its claim for relief can best be resolved after the Commission's hearings are concluded. Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp., 333 U.S. 103, 113, 68 S.Ct. 431, 437, 92 L.Ed. 568 (1948) (administrative orders are not properly subject to judicial review unless "they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process").
 
 IV. CONCLUSION
 
 27
 The orders of the Commission here under review are affirmed and the petitions for review are dismissed.
 
 
 
 [1]
 Section 4(c) provides
 Under such rules and regulations as the Commission may prescribe, every natural-gas company shall file with the Commission, within such time (not less than sixty days from June 21, 1938) and in such form as the Commission may designate, and shall keep open in convenient form and place for public inspection, schedules showing all rates and charges for any transportation or sale subject to the jurisdiction of the Commission, and the classifications, practices, and regulations affecting such rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services.
 15 U.S.C. § 717c(c) (1976).
 
 
 [2]
 Section 4(b) provides:
 No natural-gas company shall, with respect to any transportation or sale of natural gas subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage, or (2) maintain any unreasonable difference in rates, charges, service, facilities, or in any other respect, either as between localities or as between classes of service.
 Id. § 717c(b).
 
 
 [3]
 As the Commission put it, the stipulated facts were:
 (1) Nominations submitted to El Paso by its California distributors, Southern California Gas Co. (SoCal) and Pacific Gas & Electric Co. (PG&E), prioritized customer storage injection requirements as Priority 2.
 (2) El Paso knew that its California customers' nominations included customer storage injection requirements in Priority 2. See, Answer, pg. 6.
 (3) El Paso honored the tendered nominations of PG&E and SoCal in allocating its available supplies on and after the effective date of its interim curtailment (Opinion Nos. 634 and 634-A) plan.
 (4) The order of priorities established in Opinion No. 634, and held to be reasonable by the Commission, does not provide for prioritized treatment of customer storage injection requirements.
 (5) El Paso has never formally filed with the Commission any modification or proposed change in the curtailment plan established by the Commission in Opinion Nos. 634 and 634-A, reflecting a different order of priorities from that established by the Commission.
 J.A. 100-01.
 
 
 [4]
 Section 4(d) provides:
 Unless the Commission otherwise orders, no change shall be made by any natural-gas company in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.
 15 U.S.C. 717c(d) (1976).
 
 
 [5]
 SoCal also asserts that the Commission knew that SoCal has very large storage facilities; it argues that this fact alone should have put the Commission at least implicitly on notice of SoCal's nominations to El Paso for P2 storage injections. Apparently it was not until April 1975, however, that SoCal's filings with the Commission explicitly described its P2 storage injections. SoCal Br. 8
 
 
 [6]
 When pressed at oral argument, in fact, counsel for SoCal equivocated on whether El Paso's P2 storage injection deliveries were used only for P2 and P1 needs. Counsel stated that those deliveries were perhaps sometimes used for P3 needs, and the most he could say about whether some volumes may have gone to P5 California customers was that SoCal never "affirmatively" served P5 customers with El Paso's storage injection gas. The reasoning of our opinion, however, of course does not depend on whether the storage injection deliveries were or were not in fact used as El Paso contemplated
 
 
 [7]
 El Paso also asserted its interpretation was consistent with FPC Order 431, 45 F.P.C. 570 (1971), the first Commission order requiring natural gas pipelines to submit curtailment plans to the Commission for its approval, which noted that filling storage facilities was desirable. But Order 431 did not implicitly or otherwise deal with the proper priority for storage injections, and we therefore reject El Paso's reliance on it
 
 
 [8]
 The testimony was as follows:
 Q. One more question on your priorities, Mr. Kiely. In what priority would storage injections fall? I mean under your plan?
 A. I believe out of necessity that they might have to be prorated on the portion of the market not on the market, but on its use.
 Q. Well, do you mean that if the gas that is injected into storage is ultimately used for residential purposes, that it would fall into Priority 1, is that what you mean?
 A. Yes, I believe so, yes.
 
 
 [9]
 49 F.P.C. at 587
 
 
 [10]
 We also do not decide AEPCO's arguments that the Commission has improperly allocated the burden of proof in these proceedings, since that claim can best be resolved in the context of a complete record after the Commission's inquiry is completed. See FPC v. Metropolitan Edison Co., 304 U.S. 375, 383-84, 58 S.Ct. 963, 966-967, 82 L.Ed. 1408 (1938) (allowing review of "mere procedural requirements or interlocutory directions would do violence" to the provision in the Federal Power Act authorizing judicial review of Commission orders); Appeal of FTC Line of Business Report Litigation, 595 F.2d 685, 708 (D.C. Cir.) (per curiam), cert. denied, 439 U.S. 958, 99 S.Ct. 362, 58 L.Ed.2d 351 (1978)